UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DASHAWN BRANTLEY #924266,

    Plaintiff,

v.

UNKNOWN GRONDIN, et al.,

    Defendants.

_____/

Case No.  2:24-cv-00147

Hon.  Robert J. Jonker
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R. & R.) addresses Defendants' motion for summary judgment.  (ECF No. 22.)  Plaintiff has not responded.

State Prisoner Deshawn Brantley filed an unverified complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights by denying his request to use the bathroom facilities on one occasion during prisoner count.  Brantley's Eighth Amendment claim allegedly arose on April 14, 2023, at the Chippewa Correctional Facility (URF).  Brantley sues Defendants Corrections Officer (CO) Anderson, CO McKinney, and Sergeant (Sgt.) Grondin for denying his request for bathroom access.

Defendants move for summary judgment based upon qualified immunity, asserting that they did not violate clearly established Eighth Amendment law.  It is respectfully recommended that the Court grant Defendants' motion for summary judgment because no genuine issue of material fact exists.  It is recommended that the Court rule that Defendants are entitled to qualified immunity on Brantley's

Eighth Amendment claim asserting that he was refused his request for bathroom access during prison count. Defendants have set forth security reasons for denying prisoners access to use the bathroom during count. Further, Brantley received accommodation because he was provided with Tena Pads and wipes. Most importantly, Defendants did not violate clearly established Eighth Amendment law.

## II. Facts

Brantley alleges that he was issued a medical detail for "unrestricted access to bathroom." (ECF No. 1. PageID.3.) Brantley says that on April 14, 2023, he informed Defendants Anderson, McKinney, and Grondin of his medical detail and told them that he needed to use the bathroom due to an emergency bowel movement, but they each denied his request. (*Id*.) Brantley says that Anderson told him "you should've used it before count." (*Id*.) McKinney allegedly said that the medical detail was not real. (*Id.*) Brantley claims that he was forced to soil himself in front of other prisoners causing him emotional and mental distress. (*Id*.)

Brantley concedes that the bathrooms are closed during prisoner count and that prisoners receive a warning about five minutes before the count to use the bathrooms. (ECF No. 23-2, PageID.134 (Brantley deposition).) Brantley says that on April 14, 2023, the officers conducted an emergency count due to a "major shakedown" that exceeded the "regular count almost by an hour and a half." (*Id*., PageID.135.) Brantley says that on that date, the count took almost two hours and he was unable to use the bathroom. (*Id*., PageID.136.) Brantley stated that

2

medical staff had given him Tena pads which are "pretty much adult diapers, and wipes" and that he had those prior to April 14, 2023. (*Id.*, PageID.149-150.)

CO Anderson attests to working as a yard officer on April 14, 2023, which generally involves not being inside the housing unit, except for escorting prisoners from segregation and when responding to emergencies. (ECF No. 23-5, PageID.242.) According to the Logbook, Anderson escorted a prisoner from F unit segregation during the count time. (*Id.*) Anderson attests that if a prisoner asked to use the restroom, Anderson would have told the prisoner to contact his housing unit officer for permission. (*Id.*)

Sgt. Grondin attests that on April 14, 2023, she worked in the housing unit during the second shift. (ECF No. 23-6, PageID.246-247.) She states that Brantley asked for permission to use the restroom during count time between 5:30 and 6:00 pm. (*Id.*, PageID.247.) Sgt. Grondin attests that Brantley never informed her of a medical issue, and she told Brantley that he could not use the bathroom. (*Id.*) She further explained:

> It is very common for prisoners to ask to use the bathroom during count time. Often, they say they cannot wait for count to clear and that they have a medical issue or are having an emergency. Unless prisoners can provide proof of a medical condition requiring use of the bathroom, they are not permitted to use the restroom. Allowing every prisoner to use the restroom upon request during count would result in multiple prisoners using the restroom, making it much more difficult for staff to quickly and accurately conduct count.

(*Id.*, PageID.247.)

CO McKinney attests that he was the housing unit officer during second shift on April 14, 2023. (ECF No. 23-7, PageID.252.) He attests that prisoners are not

allowed to use the bathroom during count time and that he would not have allowed Brantley to use the bathroom during count time. (*Id.*) CO McKinney states that on April 14, 2023, according to the Logbook, count began at 16:00 and cleared at 16:40. (*Id.*)

The Logbook confirms that prisoner count lasted 40 minutes. (ECF No. 23-4, PageID.238.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When, as here, the non-movant fails to respond to a motion for summary judgment, the Court must "examine the movant's motion for summary judgment to

ensure that he has discharged his initial burden." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (*citing Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

### IV.    Qualified Immunity

Defendants argue that they are entitled to dismissal of the complaint based upon qualified immunity. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government

5

official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define

> clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 583 U.S. 48, 63-64 (2018).

In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate. *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involve the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other

7

conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Allegations about temporary inconveniences, such as being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) (claim that prisoner was deprived of a working toilet was denied because "minor

inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

Certainly, "forcing a person in the custody or under the control of state authority to publicly soil themselves may create a constitutional violation." *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. 2003) (dismissing inmates claim that he was denied permission to use the restroom for three hours). However, the one-time denial of the use of a toilet is insufficient, by itself, to support an Eighth Amendment claim. *Hartsfield v. Vidor,* 199 F.3d 305, 310 (6th Cir. 1999) (stating that "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment") (citing *Stephens v. Carter Cty. Jail*, 816 F.2d 682 (6th Cir.1987)); *LaPine v. Savoie*, No. 16-1893, 2017 WL 6764085, at *5 (6th Cir. Aug. 11, 2017) (allegation that inmate remained in soiled clothing for three hours is a temporary hardship that did not rise to the level of a constitutional violation).

Similarly, in *McNeal v. Kott,* 590 Fed. Appx. 566 (6th Cir. 2014), the Sixth Circuit upheld summary judgment based upon qualified immunity where a prisoner complained that he was denied use of the restroom during daily prison count on some occasions. First, the Sixth Circuit set forth some general background on count in Michigan prisons:

> There is no such thing as an escape-proof prison, as the history of Alcatraz makes clear. By taking attendance each day, the Kinross Correctional Facility tries to minimize the risks of escape and other forms of inmate misbehavior. During the count, guards fan out across the cell blocks of a given wing of the prison to make sure each inmate is where he is supposed to be. To maximize accuracy and minimize confusion, prisoners must stay in their cells while the count takes place. Because most cells do not come with toilets, inmates are told to use the

> bathroom beforehand. Prison guards give ten—and five-minute warnings before each count so no one is caught unaware. Even then, if a particular inmate needs to use the bathroom during the count, the guards have discretion to let him. Historically, the count process has taken between thirty-three and forty-six minutes to complete.

*Id.* at 567-68.

In that case, prisoner McNeal alleged that he needed to use the restroom three times per hour due to an enlarged prostate. McNeal was offered incontinence pads but refused them. In concluding that no clearly established law was violated by Defendants, the Sixth Circuit found that neither "controlling authority" nor "a robust consensus of cases of persuasive authority impose liability on prison officials who denied bathroom privileges to inmates under similar conditions." *Id.* at 569.

In *Simpson v. Overton,* 79 F. App'x 117, 119-20 (6th Cir. 2003), the plaintiff claimed that he had a medical detail permitting him to use the bathroom during prison count because of an enlarged prostrate, which caused him to urinate three to four times per hour, but a new prison policy prevented him from using the bathroom during count. The Medical Director offered a urinal bottle for plaintiff to keep in his cell and encouraged plaintiff to urinate before count and after count cleared. The Sixth Circuit held that no conceivable facts supported deliberate indifference to a medical need where officials were merely enforcing a prison policy. In *Robinson v. Kandulski*, 2019 WL 8165865 (6th Cir. Dec. 6, 2019) the Sixth Circuit granted qualified immunity to Defendants on Plaintiff's allegations that he was denied the use of the bathroom because the claims were not clearly established:

> Here, the allegations in Robinson's complaint and the evidence in the record show, at most, that Robinson's requests to use the bathroom were

> denied on several occasions, and he was generally required to wait thirty minutes or less to use the bathroom, but on one occasion was required to wait one hour and twenty minutes. The district court properly found that these facts, even if true, did not show that Ross, Golladay, Cusick, and Benoit violated a clearly established statutory or constitutional right of which a reasonable person would have known.

*Id*. at *6.

Brantley asserts that on one occasion he was not allowed to use the bathroom during prison count and he was forced to soil himself. In the opinion of the undersigned, the facts presented by Brantley are no different than the facts presented in *Hartsfield, McNeal, Simpson,* and *Robinson*. Moreover, like the accommodation offered to the plaintiff in *Simpson*, Brantley admits that he had Tena pads and wipes to accommodate his needs. Under these circumstances, no genuine issue of material fact exists, thus entitling Defendants to qualified immunity, because clearly established law was not violated by Defendants.

## V. Recommendation

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

Dated:   August 7, 2025                             /s/ *Maarten Vermaat*
                                                    MAARTEN VERMAAT
                                                    U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).